IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE:<br><br>JAWAN LEVAR JONES<br>SSN: XXX-XX-6700<br><br>TRYNEQUA SHAQUAN JONES<br>AKA TRYNEQUA SHAQUAN CRAFT<br>AKA TRYNEQUA SHAQUAN PEERMAN<br>SSN: XXX-XX-2548<br>                         DEBTORS | CASE NO. 17-03282-5-DMW<br><br>CHAPTER 13 |

## MOTION FOR RELIEF FROM STAY APPLYING 11 U.S.C. § 362(e)

Pursuant to Section 362(d) of Title 11 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code") and Bankruptcy Rules 4001 and 9014, WELLS FARGO BANK, NA (WFB) through counsel, hereby moves the Court for an Order for relief from the automatic stay provisions of 11 U.S.C. §362(a).

In support of its Motion, WFB shows unto the Court that:

1. On or about July 5, 2017, the Debtors filed a petition with the United States Bankruptcy Court for the Eastern District of North Carolina for relief under Chapter 13 of the United States Bankruptcy Code.

2. This Court has jurisdiction over the Motion pursuant to the provisions of 11 U.S.C. §362 and Bankruptcy Rules 4001 and 9014. This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §1334, the Referral Order entered herein by the Chief United States District Court Judge for the Eastern District of North Carolina and 11 U.S.C. §362. Bankruptcy Rules 4001 and 9014 apply. This matter is a core proceeding as defined in 28 U.S.C. §151 and 157(b) and to the extent any non-core issues are raised, WFB consents to the jurisdiction of this Court for determination of all issues, including non-core issues.

3. John F. Logan is the duly appointed Trustee in the Debtors' Chapter 13 proceeding.

4. On or about June 21, 2010, Jawan L. Jones and Trynequa S. Jones executed a Promissory Note ("Note") in the original principal amount of $151,953.00, a copy of which is attached hereto and incorporated herein by reference as "Exhibit A".

5. The Note referred to in the preceding paragraph is secured by a Deed of Trust on real property owned by the Debtors and known as 7110 Peachtree Road, Lynchburg, VA 24502 and more particularly described in a Deed of Trust recorded by Instrument No. 100004053 , Lynchburg City County Registry, VA. A copy of the Deed of Trust is attached hereto and incorporated herein by reference as "Exhibit B".

6. WFB services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of the Creditor. Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

7. At the time of filing herein, the Debtors were in default on their obligations to WFB.

8. WFB is a secured creditor in the Debtors' bankruptcy proceeding. Pursuant to the Debtors' Chapter 13 petition, the Debtors intend to surrender the subject property. The contractual arrearage due under the Note beginning April 1, 2017 through July 5, 2017, is at least $4,542.85.

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 4 | 04/01/17 | 07/01/17 | $1,101.55 | $4,406.20 |
| Accrued Late Charges | | | | $136.65 |

**Total: $4,542.85**

9. As of July 5, 2017, the unpaid principal balance on the above described debt to Movant was $134,659.38 plus interest accruing at the rate of 5%, accumulated late charges and fees. The amount necessary to pay the loan in full is in excess of $138,646.62.

10. A fair market value, based on the Debtors' Petition is $143,800.00.

11. Based upon the foregoing, equity exists in the subject property to allow WFB its attorney fees and costs to be assessed against the mortgage account pursuant to the security documents.

12. The property securing the obligations of the Debtors to WFB is not necessary for an effective reorganization.

13. Movant is entitled to Relief from Stay to foreclose its security interest in the property identified in the Deed of Trust attached hereto and incorporated herein by reference.

14. Movant will suffer irreparable injury, loss and damage in the event relief is not granted.

15. Movant has incurred reasonable attorney's fees and costs in connection with the prosecution of this motion.

**BASED UPON THE FOREGOING**, Movant respectfully prays that:

1. The stay imposed by 11 U.S.C. §362(a) be terminated, annulled or modified to permit Movant to foreclose its security interest in the property identified in the Deed of Trust attached hereto; or in the alternative that it receive adequate protection from the Debtors;

2. The hearing of this motion be the final hearing under 11 U.S.C. §362(c) and any preliminary hearing be consolidated herein and Orders entered accordingly;

Firm Case No: 1218915 (BK.FAY)

3. It be granted reasonable attorney's; and,

4. It has such other and further relief as the Court deems just and proper.

This the 21st day of August, 2017.

        HUTCHENS LAW FIRM

BY: _s/S. Troy Staley_
     S. TROY STALEY
     Attorney for Movant
     NC State Bar No: 43229
     Post Office Box 2505
     4317 Ramsey Street
     Fayetteville, NC 28302
     (910) 864-2668

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE: )
)
JAWAN LEVAR JONES ) CASE NO. 17-03282-5-DMW
SSN: XXX-XX-6700 )
) CHAPTER 13
TRYNEQUA SHAQUAN JONES )
AKA TRYNEQUA SHAQUAN CRAFT )
AKA TRYNEQUA SHAQUAN PEERMAN )
SSN: XXX-XX-2548 )
DEBTORS )

## NOTICE OF OPPORTUNITY FOR HEARING

TAKE NOTICE that an application or motion has been filed by Wells Fargo Bank, NA, its successors and/or assigns, as their respective interest may appear. A copy of the application or motion accompanies this Notice.

TAKE FURTHER NOTICE that any response, including objection, to the relief requested in the attached application or motion, should be filed with the Clerk of the Bankruptcy Court within fourteen (14) days of the date of this Notice and a copy served on the attorney identified below and upon other parties as required by law or court order. Any response shall clearly identify the specific motion or application to which the response is directed.

TAKE FURTHER NOTICE that if a response and a request for a hearing is filed by the Debtors, Trustee, or other parties in interest named herein in writing within the time indicated, a hearing will be conducted on the Motion and response thereto at a date, time and place to be later set by this Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the Motion and response thereto ex parte without further notice.

This the 21st day of August, 2017.

HUTCHENS LAW FIRM

BY: _s/S. Troy Staley_
S. TROY STALEY
Attorney for Movant
NC State Bar No: 43229
Post Office Box 2505
4317 Ramsey Street
Fayetteville, NC 28302
(910) 864-2668

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Firm Case No: 1218915 (BK.FAY)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date this paper was served upon the following parties by depositing a copy enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service or via the appropriate electronic servicer:

Debtors:
Jawan Levar Jones
152 Meiksham Road
Wake Forest, NC 27587

Trynequa Shaquan Jones
152 Meiksham Road
Wake Forest, NC 27587

Attorney for Debtors:
Robert Lee Roland, IV
Law Offices of John T. Orcutt
6616-203 Six Forks Road
Raleigh, NC 27615

Trustee:
John F. Logan
Office Of The Chapter 13 Trustee
PO Box 61039
Raleigh, NC 27661-1039

This the 21st day of August, 2017.

HUTCHENS LAW FIRM

BY: _s/S. Troy Staley_
S. TROY STALEY
Attorney for Creditor
NC State Bar No: 43229
Post Office Box 2505
4317 Ramsey Street
Fayetteville, NC 28302
(910) 864-2668

Firm Case No: 1218915 (BK.FAY)

EXHIBIT A

Commonwealth of Virginia

# NOTE

FHA Case No.

JUNE 21ST, 2010
[Date]

LOAN #:

7110 PEACHTREE ROAD
LYNCHBURG, VIRGINIA 24502
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
SOUTHERN TRUST MORTGAGE LLC

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED FIFTY
ONE THOUSAND NINE HUNDRED FIFTY THREE AND NO/100.

Dollars (U.S. $ 151,953.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of                FIVE
percent (       5.000       %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on AUGUST 01, 2010     . Any principal and interest remaining on the first day of   JULY 2040           , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at   4433 CORPORATION LANE #300, VIRGINIA BEACH, VA 23462
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $       815.72         . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

FHA Virginia Fixed Rate Note - 10/95

VMP-1R(VA) (0404)
VMP Mortgage Solutions, Inc. (800)521-7291

Page 1 of 3                Initials: _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ 6/21/10 (Seal)    _____ (Seal)
JAWAN L. JONES              -Borrower    TRYNEQUA S. JONES         -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                              -Borrower

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated   JUNE 21ST, 2010   , on the Property located in    LYNCHBURG COUNTY   , Virginia.

My Commission Expires: 7/31/2013          _____
                                          Notary Public

VMP-1R(VA) (0404)                Page 3 of 3

PAYABLE WITHOUT RECOURSE TO:
WELLS FARGO BANK, NA
SOUTHERN TRUST MORTGAGE, LLC

*[signature]*

CHRISTINE E. HAYES
EXECUTIVE ASSISTANT

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By *[signature]*

Scott M. Swanson
Assistant Vice President

I 00004053

142



Return To:
SOUTHERN TRUST MORTGAGE LLC

4433 CORPORATION LANE, SUITE 300
VIRGINIA BEACH, VA   23462
757-518-0700
ATTN:  POST CLOSING DEPT.

Prepared by:

Tax Map Reference #:

RPC/Parcel ID #:

[Space Above This Line For Recording Data]

Commonwealth of Virginia

DEED OF TRUST

FHA Case No.

MIN

THIS DEED OF TRUST ("Security Instrument") is made on  JUNE 21ST, 2010
The Grantor is JAWAN L. JONES AND TRYNEQUA S. JONES

("Borrower"). The trustee is   KATHRYN RICHARDS AND JERRY B. FLOWERS, III
, a resident of the Commonwealth of Virginia, whose full
residence or business address is   4433 CORPORATION LANE SUITE 300, VIRGINIA BEACH,
VIRGINIA   23462                                                                                                 , and

a resident of the Commonwealth of Virginia, whose full residence or business address is

trustees (any one of whom may act and who are referred to as
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS.  SOUTHERN TRUST MORTGAGE LLC

("Lender") is organized and existing under the laws of THE STATE OF VIRGINIA                         , and

FHA Virginia Deed of Trust with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(VA) (0001)        Amended 7/98
Page 1 of 8           Initials:

143

has an address of 4433 CORPORATION LANE #300, VIRGINIA BEACH, VA 23462
. Borrower owes Lender the principal sum of
ONE HUNDRED FIFTY ONE THOUSAND NINE HUNDRED FIFTY THREE AND NO/100.
Dollars (U.S. $ 151,953.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JULY 1ST, 2040        . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in        LYNCHBURG        ,
Virginia:
SEE SCHEDULE 'A' ATTACHED

which has the address of        7110 PEACHTREE ROAD        [Street]
LYNCHBURG        [City], Virginia  24502   [Zip Code]
("Property Address");
TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.
BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initials: ___

VMP®-4N(VA) (0801)        Page 2 of 8

141

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue

Initials: ___

VMP®-4N(VA) (0801)                Page 3 of 8

145

hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

    9. **Grounds for Acceleration of Debt.**

        (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

Initials: _____

VMP®-4N(VA) (0801)    Page 4 of 8

146

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint

Initials

VMP®-4N(VA) (0801)    Page 5 of 8

147

and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Initials:

VMP®-4N(VA) (0001)    Page 6 of 8

148

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of     5.000     % of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

Initials: _____

149

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    JAWAN L. JONES           -Borrower

_____    _____ (Seal)
                                    TRYNEQUA S. JONES        -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                    -Borrower


COMMONWEALTH OF VIRGINIA,   LYNCHBURG                                County, ss:
The foregoing instrument was acknowledged before me this   JUNE 21ST, 2010
by JAWAN L. JONES AND TRYNEQUA S. JONES

My Commission Expires: 1/31/2013
Notary Registration Number: 265867              Notary Public

VMP®-4N(VA) (0801)                    Page 8 of 8

150

## Schedule A

That certain lot or parcel of ground, together with all the buildings and improvements thereon and the privileges and appurtenances thereunto belonging, situate, lying and being in that part of the City of Lynchburg, Virginia, which was annexed from Campbell County, Virginia, on January 1, 1976, and designated Lot No. 54 on a plat entitled "Plat Showing Section 3, Richland Hills, Subdivision of Part of the Property of William N. Nelson, II, Brookville Magisterial District, Campbell County, Virginia", dated October 26, 1955, made by William Massie Warwick, S.C.S., which said plat is of record in the Clerk's Office of the Circuit Court of Campbell County, Virginia, in Plat Book 13, page 120.

It being the same real property conveyed unto Jawan L. Jones and Trynequa S. Jones from Zhiqing Li and Jianying Zou, husband and wife, by deed dated June 14, 2010, which said deed is to be recorded contemporaneously herewith.

Virginia: In the Clerk's Office of the Circuit Court of the City of Lynchburg The foregoing instrument was this day presented in the office aforesaid and is, together with the certificate of acknowledgement annexed, admitted to record JUN 22 2010 at 2:13 o'clock P M.

TESTE: Ronald M Irvine, Clerk

380.00 Tax
126.67 City Tax
_____ Transfer
5.00 TFTF
1.00 OAPF
26.00 Fee
538.67 TOTAL

Received And
Delivered To
Grantee
Closing Center

1170003397

Assessor's/Tax ID No.
Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1629
EAGAN, MN 55121-4400

PREPARED BY: WELLS FARGO BANK, N.A.

HP TEAM                    **CORPORATE ASSIGNMENT OF DEED OF TRUST**
Lynchburg City, Virginia
"JONES"

MIN #: [redacted]   SIS #: 1-888-679-6377

Date of Assignment: May 25th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOUTHERN TRUST MORTGAGE, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: Jawan L. JONES and Trynequa S. JONES To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOUTHERN TRUST MORTGAGE, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS
Trustee: Kathryn RICHARDS and Jerry B. FLOWERS, III Date of Deed of Trust: 06/21/2010 Recorded: 06/22/2010 as Instrument No.: 100004053 In Lynchburg City, State of Virginia.

Property Address: 7110 PEACHTREE ROAD, LYNCHBURG, VA 24502

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $151,953.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOUTHERN TRUST MORTGAGE, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS
On 5/25/17

By: _____
Jason Michael Nieling
Assistant Secretary

STATE OF Minnesota
COUNTY OF Dakota

On 5-25-17, before me, John Kealy, a Notary Public in the State of Minnesota, personally appeared Jason Michael Nieling, Assistant Secretary being duly sworn of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

John Kealy
Notary Expires: 1/31/2022

JOHN KEALY
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

(This area for notarial seal)

INSTRUMENT 170003397
RECORDED IN THE CLERK'S OFFICE OF
LYNCHBURG  ON
June 1, 2017 AT 11:37 AM
EUGENE C. WINGFIELD , CLERK
RECORDED BY: RHK